STAUFFER CONSTRUCTION CO., INC. ET AL. *v.*
TATE ENGINEERING, INC. ET AL.

[No. 257, September Term, 1979.]

*Decided November 14, 1979.*

The cause was argued before THOMPSON, MOYLAN and MOORE, JJ.

Submitted on brief by *Francis J. Pelland* and *Sadur & Pelland, Chartered* for appellants.

*Joseph V. Truhe, Jr.,* with whom were *James L. Thompson* and *Miller, Miller & Canby, Chartered* on the brief, for appellees.

THOMPSON, J., delivered the opinion of the Court.

In this appeal we are asked to decide the timeliness of a notice of non-payment, by a subcontractor's subcontractor under the "Little Miller Act", *Md. Code,* Real Property Article, § 9-113. We think the notice was timely.

The facts surrounding the dispute are as follows: Stauffer Construction Co., Inc. (Stauffer) one of the appellants, was the prime contractor for certain alterations and additions to Bethesda-Chevy Chase High School, pursuant to a contract with the Montgomery County Board of Education. Stauffer, as principal, and Fidelity and Deposit Company of Maryland (Surety), the second appellant, executed and delivered a labor and material payment bond as required by *Md. Code,* Real Property Article, § 9-113. Manco, Inc. (Manco), the subcontractor, agreed to perform the mechanical portion of Stauffer's contract obligation. In April of 1977, Manco accepted a proposal by appellee, Tate Engineering, Inc. (Tate), to furnish and install certain oil burner equipment and perform related work on the project for a total price of $17,745.00. After substantially completing its contract obligations, Tate billed Manco for the full contract sum on November 7, 1977, but it still had a small amount of work to complete its contract. Manco never paid Tate for work on the

contract, so by letter dated March 2, 1978, Tate sent Stauffer a copy of the November 7 invoice and notified Stauffer that it had not been paid. Manco terminated work in June, 1978, four months after the March 2nd notice letter from Tate to Stauffer complaining of non-payment by Manco, and before the project was complete. On June 1, 1978, Tate filed suit in Montgomery County Circuit Court against Stauffer and Surety on the payment bond. An accompanying motion for summary judgment was denied, upon consideration of an opposing affidavit which pointed out that Tate's billing of November 7, 1977 was more than ninety days before the March 2, 1978 notice letter and therefore was untimely under Section 9-113. After depositions were taken Tate filed a second motion for summary judgment, arguing that the notice of March 2, 1978 was timely, either because it was within ninety days of certain work performed on January 13, 1978, or because Tate delivered certain materials to the job at the request of Stauffer in early October 1978. The delivery in October 1978 consisted of two wells to accommodate aquestats. The trial court concluded that there was a genuine factual dispute as to whether or not the January 13, 1978 work was completion work which would have made the March 2, 1978 notice timely, or was corrective work which would not bring the March 2 notice within the required ninety days. The court, however, granted summary judgment for Tate on the grounds that delivery in October of 1978, made at the request of Stauffer, rendered the March 2, 1978 notice timely.

The notice provision of the Little Miller Act, *Md. Code,* Real Property Article § 9-113 (c) provides:

> "(c) *Suits on payment bonds — Right to institute.* — Every person who has furnished labor or material in the prosecution of the work provided for in such contract, in respect of which a payment bond is furnished under this section and who has not been paid in full therefor before the expiration of a period of ninety days after the day on which the last of the labor was done or performed by him or material was furnished or supplied by him for which such claim is made, shall have the right to sue on the payment

bond for the amount, or the balance thereof, unpaid at the time of institution of such suit and to prosecute said action to final judgment and execution for the sum or sums justly due him; provided, however, that any person having direct contractual relationship with a subcontractor of the contractor, or with any sub-subcontractor of the contractor but no contractual relationship express or implied with the contractor furnishing said payment bond, shall have a right of action upon the payment bond upon giving written notice to the contractor within ninety (90) days from the date on which such person did, or performed the last of the labor or furnished or supplied the last of the material for which such claim is made, stating with substantial accuracy the amount claimed and the name of the party to whom the material was furnished or supplied or for whom the labor was done or performed. Such notice shall be served by mailing the same by registered or certified mail, postage prepaid, in an envelope addressed to the contractor at any place he maintains an office or conducts his business, or his residence." [1]

To support their argument that the notice was not timely appellants rely on *National Union Indemnity Co. v. R. O. Davis, Inc.,* 393 F.2d 897 (5th Cir. 1968). There, the notice letter from the supplier to the prime contractor was dated March 18, 1960. The *only* delivery involved in the claim had an invoice dated July 25. No year was indicated on the invoice but the court stated it had to be either 1959 or 1960. The court ruled that if the delivery was in July of 1959, the March 1960 letter was untimely because it was more than ninety days after the shipment, and if the delivery date was July 1960, the March 1960 letter was premature and, therefore, was not the proper notice under the Miller Act. The case is inapposite because it was concerned with a single delivery and not a contract which was performed over a period of time. *See also,*

---

1. This section was patterned after the Miller Act, 40 U.S.C.A. § 270b (a) (1969).

*United States ex rel. Kinlau Sheet Metal Works, Inc. v. Great American Insurance Company,* 537 F.2d 222 (5th Cir. 1976) which applied the same rules where three separate jobs were involved.

In the case at bar, the trial court relied on two cases to support its holding that the notice was timely. In *United States v. Smith Road Construction Co., Inc.,* 227 F.Supp. 315 (N.D. Okla. 1964) the notice was given within ninety days after certain earlier shipments by the supplier, but before some of the shipments were made. The court found the materials were furnished under a single contract and the notice was timely, reasoning that the prime contractor had been given sufficient warning and opportunity to protect itself from its subcontractor's delinquency. The trial court also relied on *Fireman's Fund Insurance Co. v. Fischer & Porter Co.,* 143 Ga. App. 533, 239 S.E.2d 174 (1977), which interpreted Georgia's "Little Miller Act" also patterned after the Federal Act. In *Fireman's Fund* the facts are almost identical to the facts in the present case. There, the last shipment was made on February 16, 1973, but the claimant had to fulfill certain requirements of its contract with the subcontractor including furnishing labor to seal, test and calibrate the instruments after they had been installed. The court found that the last of this labor was performed on November 1, 1973. The notice letter was written on May 29, 1973. The court found that the notice letter was timely, saying the general contractor was alerted by the notice that its subcontractor was delinquent and that it was thereby given the opportunity to withhold payment sufficient to insure satisfaction of the claimant without double payment. Once again there was a single contract.

We see no tension between any of the four cases cited above. The rule of these cases is clear that if there is a single contract, it is immaterial if a small part of the work is performed or a small part of the materials is furnished after the notice; the rule, however, is to the contrary if each delivery is a separate contract.

The obvious purpose of the payment bond is to protect subcontractors and materialmen on State or other public

projects where they have no lien on the work done. *Mayor of Baltimore v. Fidelity and Deposit Co.,* 282 Md. 431, 438, 386 A.2d 749 (1978); *State Highway Administration v. Transamerica Insurance Company,* 278 Md. 690, 697, 367 A.2d 509 (1976). The Act's provisions are to be liberally construed to protect persons whose labor and materials go into government projects. *Mayor of Baltimore v. Fidelity and Deposit Co., supra* at 445. The obvious purpose of the ninety day provision is to protect the prime contractor so that after the ninety days he can safely pay a subcontractor, provided he has received no written notice from latter's materialmen or subcontractors. *United States ex rel. J. A. Edwards & Co., v. Thompson Construction Corp.,* 273 F.2d 873, 875 (2d Cir. 1959), *cert. denied,* 362 U.S. 951 (1960). Appellants argue that the purpose of the notice provision is undermined by the trial court's decision and was contrary to the clear language of the statute which gives the right of materialmen to sue "within ninety days from the date on which such persons supplied the last of the material for which such claim is made." Appellants contend that the words "for which such claim is made" mean that the claimant can only claim for labor and materials supplied before the notice. As we see it, the words "for which such claim is made" cover all labor and materials supplied in an indivisible contract. Here, the contract was indivisible and the work was substantially, but not totally, completed before notice was given. We hold the date from which the ninety days begins to run is the date the last work necessary to complete the contract was performed or the date the last materials, necessary to complete the contract, were furnished. *Mt. Airy Plumbing & Heating Inc. v. Grey Dawn Development Co.,* 237 Md. 38, 43, 205 A.2d 299 (1964) (interpreting timeliness of notice for mechanics lien). The cases are unanimous in holding that the relevant date from which the ninety day period will run is the last date upon which any work or materials necessary to complete the contract is performed or furnished. *See, e.g. United States ex rel. Noland Company v. Andrews,* 406 F.2d 790 (4th Cir. 1969) and Annot., Time of Notice to Public Works Contractor on United States Project Under Miller Act, 78 A.L.R.2d 412 (1961).

Considering the purpose of the "Little Miller Act" and applying the required liberal construction to its provisions we conclude that the notice was timely in the instant case. Any notice received by Stauffer after October 1978 would have been identical to that given to the contractor. Under these circumstances, neither Stauffer, nor its Surety, can be heard to complain that notice of non-payment was received too soon for their protection. Tate gave the required notice well in advance of that deadline, and thus it is entitled to recover on the bond. Its motion for summary judgment was properly granted.

*Judgment affirmed.*
*Appellants to pay the costs.*