677 F.2d 383
 69 A.L.R.Fed. 592, 29 Cont.Cas.Fed. (CCH) 82,471
 The UNITED STATES of America for the Use of Honeywell,
Incorporated, Appellant,
v.
A & L MECHANICAL CONTRACTORS, INCORPORATED, Defendant,
and
LeBlanc Construction Company, National Surety Corporation, Appellees.
 No. 81-1754.
 United States Court of Appeals,
Fourth Circuit.
 Argued Jan. 6, 1982.
Decided April 22, 1982.
 
 Bradfute W. Davenport, Jr., Richmond, Va. (James C. Roberts, David G. Shuford, Mays, Valentine, Davenport & Moore, Richmond, Va., Cecil P. Merritt, Merritt & Gaylor, Goldsboro, N. C., on brief), for appellant.
 Leonard T. Jernigan, Jr., Raleigh, N. C. (Michaels & Jernigan, Raleigh, N. C., on brief), for appellees.
 Before WINTER, Chief Judge, HAYNSWORTH, Senior Circuit Judge, and HALL, Circuit Judge.
 HAYNSWORTH, Senior Circuit Judge:
 
 
 1
 This is a suit under the Miller Act[1] against a general construction contractor and its surety to collect unpaid debts owed by a subcontractor to Honeywell. Judgment was entered for the defendants on the grounds that all of the notices of the indebtedness were untimely, that, in any event, the amount of the claim was not stated with sufficient accuracy and, moreover, that Honeywell was estopped to assert the claim.[2] We conclude that, with respect to work already done, the notice was not untimely though further work remained to be done. We also conclude that there was no estoppel and that the claim was stated with reasonable accuracy.
 
 I.
 
 2
 The United States Air Force entered into a contract with LeBlanc Construction Company for the renovation of five dormitories at the Seymour Johnson Air Force Base. LeBlanc subcontracted the heating and cooling work to A & L Mechanical Contractors, Inc., which entered into a sub-subcontract with Honeywell, Inc. to provide the automatic temperature control systems, and to calibrate and adjust the controls after installation of the systems by A & L Mechanical.
 
 
 3
 Honeywell supplied the components of all five systems, but approximately three months before completion of all of the calibration and adjustment work, Honeywell informed LeBlanc by registered mail that A & L Mechanical was indebted to it by an unpaid balance of $31,083.96. Several weeks later LeBlanc wrote to Honeywell to inform it that A & L Mechanical denied that its account was due. Thereafter, on November 30, 1979, Honeywell sent another letter to LeBlanc by registered mail stating that there was still an unpaid balance of $27,161.56.[3]
 
 
 4
 Honeywell completed its work on January 22, 1980, and on May 7, 1980, it sent a third letter to LeBlanc saying that A & L Mechanical's indebtedness to Honeywell on the job was $28,522.54. A fourth notice was sent on June 20, 1980.
 
 II.
 
 5
 Honeywell does not contend that either the May or June 1980 notice is effective. The ninety days from the January 22, 1980 completion date had run before the May 7 notice. It does contend that the October and November 1979 notices were effective with respect to materials furnished and work done before the dates of those notices. With that we agree.
 
 
 6
 Under § 270b(a), Honeywell is given a right of action upon a payment bond "upon giving written notice to said contractor within ninety days from the date on which such person did or performed the last of the labor or furnished or supplied the last of the material for which such claim is made, stating with substantial accuracy the amount claimed ...."
 
 
 7
 The statute does not require that the notice be given only after final completion of the project. The notice is timely if given within ninety days after performance of the last labor or supply of the last material "for which such claim is made." The statutory distinction is both necessary and reasonable. If a subcontractor is delinquent in making progress payments, its subcontractor, the claimant, should not be required to continue work on a prolonged project without progress payments. It should be entitled to assert its rights under the Miller Act so that its rights are protected and a defaulting subcontractor is either required to discharge its obligations or get off the job. The November 1979 notice did not claim anything with respect to work to be done or materials supplied thereafter; it was within ninety days after the labor or material "for which such claim is made" had been furnished.
 
 
 8
 In United States ex rel. Kinlau Sheet Metal Works, Inc. v. Great American Insurance Co., 537 F.2d 222 (5th Cir. 1976), it was said, in effect, that a notice given before completion of a construction job was premature and could not be considered as a qualifying notice. The notice was also held to have been substantively deficient, however, and the statement about prematurity is inconsistent with other cases construing the Miller Act and similar state statutes.[4]
 
 
 9
 The district court also thought its position was supported by our cases[5] in which we held ineffective notices given more than ninety days after completion of a project. Strict enforcement of that requirement is necessary, however. The design of the statute is to give contractors, such as Honeywell, ninety days after completion of their work within which to assert a claim against the general contractor and its surety. If it does not do so within that period, the contractor may make final payment to the subcontractor with impunity. It would be quite unfair to the general contractor to expose it to stale claims of which it had no notice during the ninety day period. See Noland Company v. Allied Contractors, Inc., 273 F.2d 917, 920-21 (4th Cir. 1959). But those questions have no bearing upon the question of the validity of the November 1979 notice claiming payment for work already done. The claim was in no sense stale. Indeed, the defendant seeks to invalidate it for prematurity. However, it clearly sufficed to give notice of the claim in the maximum amount of $27,161.56. Nevertheless, in February LeBlanc made final payments to A & L Mechanical without assuring itself that Honeywell had been paid.[6]
 
 
 10
 The principal purpose of the Miller Act is the protection of persons supplying labor and materials to subcontractors on federal construction projects. To that end, the Supreme Court has held that the Miller Act should receive a liberal construction. United States ex rel Sherman v. Carter, 353 U.S. 210, 216, 77 S.Ct. 793, 796, 1 L.Ed.2d 776 (1957). We do not regard our construction as being "liberal," but surely the defendant's construction that would invalidate the November 1979 notice would be niggardly.
 
 III.
 
 11
 The defendant's claim that the amount was not stated with substantial accuracy is primarily premised upon the differences in the amounts claimed. The October 1979 notice claimed over $31,000, the November 1979 notice claimed over $27,000, and the May 1980 notice over $28,000. The explanation, however, is obvious. Honeywell was paid over $5,000 between the October and November notices, but it also had done additional work. The May notice obviously reflects the additional work done between November 30, 1979 and January 22, 1980. Nothing in these circumstances suggests that the amount claimed in the November 1979 notice was not substantially accurate.
 
 
 12
 On appeal, for the first time, LeBlanc suggests that Honeywell had two separate contracts with A & L Mechanical, and that it had confused the two when it gave these notices. The district court had not addressed that question, and we cannot find the facts. LeBlanc also suggests that there may be a difference of opinion between Honeywell and A & L Mechanical as to the amount due on November 30, 1979. That may be, but the fact that a dispute may exist does not show that the November 30, 1979 notice was not substantially accurate. If, in the resolution of any underlying dispute, Honeywell was found substantially correct, the substantial accuracy of its claim would have been established. Even if in the resolution of that dispute Honeywell was found to be due something less than its claim, the notice may still have been substantially accurate, for the statute does not require precision. See, e.g., Liles Construction Co. v. U. S. ex rel Stabler Paint Mfg. Co., 415 F.2d 889 (5th Cir. 1969).
 
 IV.
 
 13
 The district court's conclusion that Honeywell's assertion of this claim is barred by an estoppel or waiver, entered on a motion for summary judgment, cannot be affirmed on this record.
 
 
 14
 There were two telephone conversations between a representative of LeBlanc and a representative of Honeywell. The two participants are in disagreement as to what was said. The only undisputed fact is that after the first of these conversations the representative of Honeywell sent to the representative of LeBlanc a copy of his Honeywell interoffice memorandum in which he stated that A & L Mechanical had promised to pay Honeywell $10,000 in December 1979 and the balance due in January 1980. This, the Honeywell representative said, was a satisfactory schedule. This cannot be read, however, as a statement that Honeywell had been paid or that it was satisfied with A & L Mechanical's payment performance and was willing to look for payment alone to A & L Mechanical. It was simply a statement that Honeywell would be satisfied if A & L Mechanical made the payments in accordance with the schedule. Moreover, we are informed that LeBlanc's representative admitted that he was told during the second telephone conversation that some $22,000 was still due. If so, it seems highly improbable that LeBlanc could show the detrimental reliance upon anything said in either of the two telephone conversations, which is essential to the creation of an estoppel under the Miller Act. Moyer v. United States ex rel Trane Co., 206 F.2d 57 (4th Cir. 1953).
 
 V.
 
 15
 Since we conclude that summary judgment was inappropriate on this record, the judgment is reversed and the case remanded for further proceedings.
 
 
 16
 REVERSED AND REMANDED.
 
 K. K. HALL, Circuit Judge, dissenting:
 
 17
 I do not agree that the Miller Act sanctions the filing of notices while a supplier is performing its duties under a contract.
 
 The Act provides, in pertinent part:
 
 18
 "(A)ny person having direct contractual relationship with a subcontractor but no contractual relationship express or implied with the contractor furnishing said payment bond shall have a right of action upon the said payment bond upon giving notice to said contractor within ninety days from the date on which such person did or performed the last of the labor or furnished or supplied the last of the material for which such claim is made...." 40 U.S.C. § 270b(a). (Emphasis added)
 
 
 19
 When work is performed pursuant to a written contract, this statute contemplates the filing of a written notice after the last of the labor or materials has been supplied under the terms of that contract. Since the last work under Honeywell's contract was furnished on January 22, 1980, that date became the threshold date for written notices. United States ex rel. Kinlau Sheet Metal Works, Inc. v. Great American Ins. Co., 537 F.2d 222 (5th Cir. 1976); National Union Indem. Co. v. R. O. Davis, Inc., 393 F.2d 897 (5th Cir. 1968).
 
 
 20
 Today's decision also creates significant administrative problems. For example, a notice filed during performance may become erroneous or moot because of additional work, subsequent contract modifications or negotiations between the parties. Rather than permit the constant updating of previous notices, it would be much more expedient to interpret the Act to require filing of the notice after the work has ended.
 
 
 21
 In the final analysis, the majority has needlessly obscured a relatively simple, workable statute. Because this interpretation confers minimal benefit while creating heightened confusion, I dissent.
 
 
 
 [1]
 40 U.S.C.A. § 270a et seq
 
 
 [2]
 United States v. LeBlanc, 515 F.Supp. 1272 (E.D.N.C.1981)
 
 
 [3]
 A & L Mechanical had paid Honeywell $5,440.01 in the interim between the two notices, but Honeywell apparently had done further work on the project
 
 
 [4]
 United States ex rel Pool Construction Co. v. Smith Road Construction Co., 227 F.Supp. 315 (N.D.Okla.1964); Fireman's Fund Insurance Co. v. Fischer & Porter Co., 143 Ga.App. 533, 239 S.E.2d 174 (1977); Stauffer Construction Co. v. Tate Engineering, Inc., 44 Md.App. 240, 407 A.2d 1191 (1979)
 
 
 [5]
 United States ex rel Dukane Corporation v. United States Fidelity & Guaranty Company, 422 F.2d 597 (4th Cir. 1970); United States ex rel Westinghouse Electric Supply Company v. Endebrock-White Company, 275 F.2d 57 (4th Cir. 1960)
 
 
 [6]
 A & L Mechanical was in bankruptcy a few months later